Good morning, and may it please the court. My name is Mark Sandberg. I'm here on behalf of Charles Herron. I have several things I'd like to discuss with you this morning. First of all, I'd like to talk about why this case never belonged in federal court in the first place. And then second of all, I'd like to talk about some things that happened to us once we were here and several of the rulings we got. Where does Mrs. Treloff and her mother stand with respect to this federal litigation? I notice they don't seem to be parties. No, Your Honor, they are not. They were Herron's ass and eve. They filed a state court action in Bethel, a small town in Alaska, and that case was stayed pending the outcome of this one. But they were never joined to this, and so at one point, I actually believe I moved to dismiss on that basis, as I recall. And what the court said was, no, you're not going to get a dismissal on that basis, but rather it recommended that Allstate add them to this case because they are, after all, the real party of interest here. I mean, my client, as I said early on and often, really didn't have a dog in this fight. My client had assigned his rights against Allstate, and yet Allstate sued my client and we went through a whole trial here. But the real party of interest was indeed Mrs. Treloff, and Allstate never did add them to this case, despite the fact that... But you're not home free, given the assertion that settling, or rather assigning the claim, is a breach of the insurance policy. Well, that's true, Your Honor. My client, when my client assigned, my client was obligated to cooperate with Ms. Treloff. And so when Allstate filed suit against my client, he cooperated by defending this case. But in terms of his actual interest in the outcome, I mean, the person this will impact at the end of the day is the young native woman, Ms. Treloff, who was actually injured in the accident. And she's not here, and in fact, her rights were never adjudicated. But that's true. And I'd like to talk, if I may, about why this case differs from the ordinary insurance declaratory relief action that we're all familiar with. And the reason is, in those cases, normally a carrier comes in, sues the policyholder, and it says, we'd like the court to construe the policy. We would like the court to interpret the contract. That's not what happened here at all. What happened here was Allstate sued, and it said, we would like the court to review our conduct. We would like the court to review the claims handling and determine whether or not a tort occurred. That's really what happened. And so the cases that we've cited, like Cunningham and Morrison and the cases that are cited in Wright and Miller, what they really say is that's not what the Declaratory Judgment Act was intended for. The Declaratory Judgment Act wasn't intended to allow a potential tortfeasor to sue its victim in federal court and thereby suddenly declare itself the plaintiff and really unhorse what would be a state court bad faith case. Doesn't Allstate assert that there's a material breach by your client? Oh, yes. So that's a contract issue, not a tort issue. Insurance bad faith is a strange area of the law, and it is sometimes called contort. And so it is said the case that we cited, the Weifert case that we cited, State Farm versus Weifert, says that an insurance bad faith claim sounds both in contract, because after all, that is the origin of the relationship, and in tort. But these are tort cases. I mean, that's why we can recover punitive damages in a bad faith case. That's why we can recover consequential damages. We can recover tort damages that are far different and perhaps far larger than simply applying the insurance contract. So it is not simply a contract case. I mean, I do agree that is Allstate's response to my argument. My argument is this case is nothing other than a tortfeasor racing us to the courthouse and saying, okay, now I'm the plaintiff here. I'd like the court to declare that I did nothing wrong. And so... He's seeking declaration that your client did something wrong, but your client's, which is conceded unless the insurance company did something wrong first. That's right. But the issue in these cases, I have a friend who says that the real issue, the way he describes it is a bad faith case is an exercise or we're going to pin the tail on the dirty breacher, who breached first. And there's no question that my client, when my client consents to entry of judgment and assigns rights, that is a violation, a breach of the cooperation clause. Why isn't it a material breach? Oh, it is. I don't have any problem with that. All right. Very well. It is indeed a material breach. The place we encounter that, again, is in the arguments regarding amending the judgment where I said that there was no prejudice was ever shown. But if I may, I'll get to that one unless you would like me to go to it now. I'd certainly like to answer things in the order you'd like them done. But before we leave the issue of whether or not it belonged in this courthouse, the issue really in a normal bad faith case where someone has done what my client did is whether that was excused by the conduct of the insurer. In other words, had the insurer breached the duty of good faith and fair dealing, which Alaska law tells us sounds both in contract and in tort. If they have, then my client's excused. Then my client is essentially allowed to deal directly with the other side, strike their own deal, and protect themselves. Because that's what's supposed to be happening here. I mean, all state has an insurer who's caused a bad accident. All state has someone who faces a substantial likelihood of an excess judgment. And all state's job is to protect that person. And if they don't protect that person, if their conduct, if their claims handling, we're not talking about the terms of the contract. We're talking about their claims handling. If their claims handling after the accident doesn't protect that person, then indeed they face serious consequences. Just help me out on this before you go to the other issues. This is essentially a dispute between an insured and the insurer. Yes. Over liabilities in connection with the administration of an insurance policy. Now, I mean, in a broad sense. That's where it started. Yeah. Well, we've got a lot of finger pointing. And we've had a trial. Now, what authority is there that this dispute between the insurer and the insured should not belong in federal court and should be litigated in state court? Because I, what is the case that you're relying on that's most like this one where we've said, no, no, we shouldn't exercise jurisdiction? The cases we cited are Cunningham, Morrison, and the section of Wright and Miller, which say that a tort defendant can't proclaim itself the plaintiff on horse, the natural. Yeah, I understand. In the insurance context, which is the case that's closest to this one? Well, among the cases that we cited, I'm not sure any of them are precisely on point. I mean, that's the difference. This may be contort, but it's got the con part, too. And if this were your client racing to federal court to fend off the injured plaintiff's case, it would fit the Cunningham pattern. This is an insurance contract case, which certainly has tort elements. But I haven't found any authority that suggests in the insurance context case that going for a deck action is not considered what you do. Well, I guess I would state the converse as well, which is I'm unaware of any Ninth Circuit or other authorities saying that an insurance company is allowed to come to federal court and seek a declaration that it did not commit bad faith claims handling. At this point in the game, it's an awfully hard thing for us to decide to make some new law and say everything that's happened over the past several years is a waste of time. And I don't want you to not have time to speak to your other arguments. Before I leave that one, let me say that's exactly what happened in the BASF case that we cited. And so, I mean, in that case, the district court had declared that there was a valid statute of limitations argument, and the Eighth Circuit vacated it anyhow. That one was after a trial had occurred. But let me move on to my other points, if we may. My other points in the order that they appear in our brief are simply that having decided to retain jurisdiction, the court should have decided that Allstate had breached its duties as a matter of law because there really wasn't anything left for a jury to decide. I mean, it is true that the jury was asked a single question about did Allstate behave reasonably when it tendered its limits at the end of May in 2003, and they answered that question, yes. And that, in my mind, if we had asked a jury was it reasonable for Allstate to drive 70 in a 55 zone, perhaps they would have answered yes, too, if they heard everything Allstate had to say. But the fact was, as a matter of law, Allstate had breached its duties. Allstate had duties under Bona and Jackson cases to tender when it knew there was a substantial likelihood. The district court had already resolved that issue by saying they had everything that they needed while there was an opportunity, while there was still an open offer to protect my client, and they didn't do it. And they never even offered an explanation. The other breach was ---- Is your argument that it should never have gone to the jury on that issue or what? Yes, sir. Yes, sir. In what theory? That the breach should have been established as a matter of law. There were no facts to the contrary. I mean, that there was ---- the court had already ruled. I wouldn't make that argument if the court hadn't already decided that Allstate had everything it needed to know that it ---- I believe the court's words were easily exceeded the policy limits prior to May 16th when the opportunity to expire, I mean, to settle expired. And so, yes, I would say there was nothing ---- there was no issue there. The more ---- the next one would be the failure to send an excess letter. That was undisputed. That's a breach. Alaska law says you have to send one. They didn't do it. And the court ---- Did Alaska law clearly say that that results in liability even though it had no impact? That brings me to my next point, which is the ---- I mean, if it is, then you should tell me that. If it isn't, then we'll go to your next question. The fact that it is a breach is well established. Right. And fine, it's a breach, but it doesn't seem to have any impact whatsoever because it wasn't unknown to your client that there was a potential problem out there. Which brings me to my next point, which is the court threw out most of our case because it decided that the breaches we were postulating, except for failure to tender by a particular day, didn't harm Mr. Herron. And that's not Alaska law. Alaska law does not require that the carrier's breach harm the insured or even that the insured know about the carrier's breach. If the carrier has committed a material breach, then my client is excused. That's what it says in the Grace case. That's what I think is footnote 9 says in the Grace case. It rejects authority that requires a showing of harm by my client as a precondition. And so when he threw out most of our case, it was because he thought and he said that those breaches, if they occurred, didn't harm Mr. Herron. That and that we shouldn't have had to prove harm. That's not Alaska law. My final point, because I'm getting down on time here, is that the amending the judgment, the judgment that entered, tracked perfectly the issue that actually got tried, submitted to the jury, and resolved. It said all state behaved reasonably. It declared all state behaved reasonably when it tendered its policy limits at the end of May 2003.  And the judgment now says all kinds of things that never got litigated, such as that my client's breach by consenting to entry of judgment wasn't excused by anything that all state did beforehand. In fact, as we just talked about, we weren't even allowed to litigate most of our theories of breach. And so now suddenly that issue has been resolved. The other thing is that it says it doesn't even address, it says that all state is relieved from the obligation to pay, even though there was no finding that my client prejudiced all state by consenting to entry of judgment. My client was going to be liable anyway. All state knew that Mr. Herron was going to be liable. All state knew there was going to be a big judgment. There's no question about that. There was no evidence taken even as to what would have happened. In fact, we had bifurcated as to the reasonableness of the amount, and we never got that far. So there's no way they could say all state was prejudiced, and that's required. And then finally, they didn't meet the criterion of the Ninth Circuit for amending. You have procedures. They didn't meet them. Thank you. May I say 30 seconds? Yes, sir. May it please the Court. I'm Gary Zipkin. I represent Allstate Insurance Company. To respond immediately to some of the points that were just made, Allstate's contract was with Mr. Herron. Allstate had no contract with Ms. Treloff or Ms. Kenick. They have merely derivative claims. And the issue that we brought to the Court in our declaratory judgment action was about whether Mr. Herron was about to anticipatorily breach that contract by confessing judgment, which he then did for over 16 times the limit of our liability. Our prejudice is manifest. We filed- The prejudice for the excess over your policy limits. One thing that's puzzled me here is how is it that the policies declared null and void, at least the portion for which you were undoubtedly liable, it seems to me should still be on the table. Well, Alaska law is pretty clear, including grace. If I could say that's true in my reading. I'm having trouble reading some of these cases. What says that the original $100,000 plus, it's a little more than that, is gone now? That Allstate actually gets an affirmative benefit isn't liable for what it clearly would have been liable for. I don't see anything that says that. Well, Allstate tried to pay that $100,000 plus attorney's fees, and Alaska law is clear. If you materially breach by confessing judgment, you breach the duty to cooperate, then you, and if that is not excused by a prior material breach by the insurer, then you have committed such a total breach of the policy that you have voided the liability limits. And that's what Alaska case law does say that. You point to a case where that's actually the holding. Well, grace actually, I think grace versus INA does speak to if you have a confession of judgment. In fact, I just. The problem with grace is the numbers in that case don't tell us what the situation would be in this case. That's true. And grace, part of this is the issue of to what extent prejudice was acquired under Alaska law. I mean, we've heard from Mr. Heron's counsel that prejudice is not acquired under Alaska law. I suspect you're going to want to speak to that. It seems to me that to the extent that prejudice is required under Alaska law, Allstate certainly has a good case for prejudice for the potential liability beyond the policy limits, but doesn't have much of a case for prejudice for the liability within the policy limits, because it was on the hook for that anyway. We felt we were on the hook for it, Your Honor. We offered it up, and actually, you know, the whole issue in this case really was a straightforward issue. What accounts for the difference between the May 16th deadline, which seemed to come out of nowhere, and the two-week delay in finally making the offer? Yes, thank you. What's going on there? Yes, Judge O'Scanlan, Allstate has an internal process. Kathy Berry is the line adjuster, and her evaluation was that this case did not justify payment of full policy limits. Ms. Trayloff made an amazing recovery. She was apparently seriously injured, and she made a very strong recovery. Kathy Berry was in constant communication with Michelle Powers, Ms. Trayloff's lawyer, and they were working towards resolution. Ms. Powers writes that letter in April 10, 2003, that says May 16, unless there is further discussion leading to pre-filing resolution. And Ms. Berry, the internal process that Allstate has requires Ms. Berry to analyze that case and bring it to Lori Barra, and Lori Barra has to evaluate it, and then they take it to Karen Peterson, who's the MCO. She's the manager of the claim office, and it is not until the end of May that that internal process was completed. It is true that, as Judge Burgess held, we had, Allstate had the information upon which it could have determined that this case was a policy limits case. But could is not should, and Judge Burgess agreed that the evidence should be presented to the jury to determine whether Allstate acted reasonably, properly, in view of all the circumstances, in needing that additional two weeks, which is not two years, not two months, two weeks, to complete this evaluation process. There's a three-step process. That was all laid out, and Judge Burgess properly agreed this is a jury issue. Such questions of insurer conduct are typically insurer issues. State Farm v. Weiford makes it clear, normally these are questions for the jury. It was properly for the jury. It was not a summary judgment matter. And, of course, the standard of review on that is that all of the inferences, the facts should be looked into. So what is it that the jury actually found? They answered the only question. The question here was, since this is a clear liability case, and since there was clear causation of injuries to Ms. Trayloff, the question is, did Allstate act reasonably with regard to the damage analysis? Did it act reasonably when it offered full policy limits at the end of May 2003 and not at some earlier date? Because this is a pure damages case. That's all that's at issue. There's no liability questions, none of that, no causation, damages. So it's a simple, straightforward, single-question case. And the jury was allowed to consider all the facts. This is not some case where there was some limited, you know, We brought the jury here all about Allstate's investigation and evaluation. Every single thing Allstate did from the beginning to the end was laid out. And Allstate had to explain. We had the burden of proof, and we had to explain to the jury why it was that we needed that extra two weeks, why, even though we could have offered by May 16th, it was reasonable for us to go until the end of May. That May 16th date was just an arbitrary date proposed by the attorney for Trayloff. Do I have that correct? Yes, I think she admitted that. It bears no relationship to some planned surgery or some planned event that was significant to anybody. And she admitted, her letter, she admitted on the stand that what she was looking for was either an offer of limits by that date or a clear indication from Allstate that it was going to work with her to try to settle that case. You know, I want to see discussions that would be leading to a prefiling resolution. And Allstate met the terms of her letter. We did. We met the terms of her letter. And that's really what the question was for the jury. Did we meet the terms of her letter? Did we act reasonably under the circumstances? Did we offer up our limits? We did. And it is a harsh remedy. I agree it's a harsh remedy. But Alaska law does say if you void the policy, if you were going to … You keep telling me that, but you haven't identified a case that actually holds that. Well, I think the Davis v. Criterion, Grace v. INA, Theodore v. Zurich Insurance, all cited in our briefs, I think they do all stand for the proposition that if you are going to take this extreme action of unilaterally breaching the contract, confessing judgment, I think those cases do stand for the proposition of a very harsh remedy. Allstate was prepared to settle this case. This case would have settled. But let me put to you what's potentially the mirror image of that, is that the case that Alaska law doesn't require a showing of prejudice by the insured for a failure by an insurance company to, for example, give notice that the insured is facing liability and excessive policy limits. Because it appears uncontested that Allstate did not give such notice. It's been argued by Mr. Heron's counsel that as a result, Allstate should be liable despite the lack of prejudice. Is that Alaska law? That's not Alaska law. There's not a single case. Why is Alaska law inconsistent? Because you're telling me that prejudice should be required on one side and not required on the other. Well, it has to be. Is Alaska law inconsistent? No, I think it has to be material. You have to link this whole discussion about the excess letters should have gone out. First of all, it was cured by the fact that Mr. Heron's own lawyer sent a letter that talked about the excess exposure. But there is no connection. There's no nexus between this alleged failure to send out an excess letter and whether Allstate should have offered up policy limits earlier. If there's a nexus to the alleged bad faith between the alleged breach. Well, Mr. Heron's argument is that the breach by Allstate by filing to send out the letter ends the game. You don't need to consider anything after that. Well, that would be like. That's Alaska law. See, Alaska law also says you have to keep your file, your claim file in good order. If you don't have a notation about an important event, that's a breach of Alaska law under our Unfair Claims Settlement Practices Act and the regulations. But if we were, if we failed to make a note about a conversation, an important conversation, or if we failed to get a letter out within the 15-day period or the 10-day period, we took 20 days. It's a breach, but it has to have caused harm. There has to be a connection between the breach and the remedy you seek. There is no connection about this excess letter. It's like finding an unnecessary delay by Allstate to send out a letter or failing to document something in their claim file. Those are breaches. We would concede a no-claim file is perfect. There's going to be a breach somewhere. You have to connect the breach to some harm. Otherwise, there's no defense for any insurance company because there's no claim file that's perfect. If you look at it the same way at the other end, how is it that Allstate, which concedes its liability for policy limits, is able to escape that liability because of a breach? Because I think Alaska law does stand for the proposition that a unilateral confession for some multiple. Here, 16 times as the trail off. It was even more if you consider Kenick. It is such a repudiation of the duty between insurer and insured. It is such a rejection of the contract that it is a rejection of the contract. And the repudiation act, in this case the confession of judgment, is declared void. Yes. The confession is declared void. And that is why, going back to these jurisdiction arguments, and I don't know how much really I need to talk. This was perfectly appropriate for the court to take jurisdiction. The court did consider the Diesel and the Brillhart factors. The court did go through that analysis and found that we're talking here about clarifying the legal relationships of the parties. That's classic need for federal court jurisdiction under the Declaratory Judgment Action Act. And Allstate was trying to stop what then occurred. It filed it before he actually signed the confession. And so court properly had jurisdiction. And on the same amount, amended judgment. We didn't attack the judgment. All we did was ask the court to place the jury's verdict into the context of the relief that we saw in our complaint and the court's prior rulings as a matter of law and to put it into the context that it needed to be put into. And that is what the court did. We did not attack the judgment. And the very case cited by Mr. Herron, Turner v. Burlington Northern, says the district court has, and I quote, considerable discretion when considering a motion to amend a judgment. We do not think we have to meet the factors in Turner for successfully attacking the judgment. And unless you have additional questions, I really think I'll stop early. Thank you. Let me do ask one more question. That is the argument with regard to the amended final judgment. Yes. And not the procedural argument so much as implicitly in this the court has decided there were no other issues to be considered with regard to the additional elements added to the amended final judgment. Mr. Herron has contested that. What's your position? I think it's quite clear. The issue, as Mr. Herron's counsel has characterized it, is a who breached first issue. And if he has conceded, as he has, as he must, that he materially breached, then unless he can find evidence of excuse by a material breach by all state, then the remedy is, as we requested in our complaint and as the court said in the amended judgment, is that the contract has been repudiated and voided. So basically, we take the very same things Mr. Herron's arguing here and put it into the context of the court's decision. The jury found we acted reasonably by not offering limits until the end of May. What does that mean? That means we did not breach first. What does that mean? That means his confession was unexcused. What does that mean? It means that there is no coverage. Thank you. That's a long list of things I don't remember the jury deciding, but let me in my very brief time left talk about prejudice. The law is not symmetrical here. A material breach by the insurance company will excuse the insured. But to excuse the insurer, we need a material breach plus prejudice. That's what cases like Esty say, and the Campbell case that we cited from California is a particular application to our kind of facts, where in Campbell the fellow breached, he didn't even show up. He disappeared and let a default enter. And yet, I mean, it's clearly a breach. I can't imagine what would be a bigger breach, a more material breach. But what about confession of judgment for 16 times the policy limit? But it's not 16 times the damages. That's the difference. I mean, there is no reason that a confession of judgment would be for the size of a policy. It would be for the size of the damages. And so, alas. Except that your client at the same time is getting let off the hook. So, plainly, this is all an instrument designed to try to put the insurance company into the crosshairs for the larger amount. Isn't that the case? I will not deny that for a second. So, it really is talking about what it is the insurance company is going to be asked to account for in comparison with the policy limits. Well, the question is, if the insurance company has done everything right, they're going to be fine. If the insurance company has committed a tort, then they have a problem and they may be responsible for the full damages and not merely their policy limits. That's the issue we're trying to frame. And because I hope to have some credibility with this panel, I'm not going to tell you otherwise. Well, how far do you want us to unwind this ball of string that we've got here? How far would I like it? I'd like you to send it back to Judge Burgess and tell him to dismiss the case. I'd like you to vacate remand with instructions. All the way back. Yes, because I believe this case should be in state court, in Bethel, where they can get all the issues, all the parties. If we disagree with you on that. Then depending upon which argument would be accepted, I suppose. You either want a new trial or you want a summary judgment. Yes. Okay. Thank you. You have about a minute and a half. Oh, you're not. You're done. I'm sorry. What am I doing? Okay. The case is already submitted. Good grief.
judges: Schroeder, O'scannlain, Clifton